

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

Honorable Walter Murchison
County Attorney
Haskell County
Haskell, Texas

Dear Sir:                    Opinion No. O-4124

Re: Does the term "resident
property tax paying voters"
as used in Arts. 752e and
752d, V.A.C.S., mean that
the signers of the petition
therein mentioned for a
road bond election must
have actually paid their
poll taxes so as to be
qualified to vote?

Your request for our opinion on the hereinabove cap-
tioned question has been received by this department. We quote
from your letter as follows:

"The County Judge and Commissioners Court
of Haskell County have requested me to submit
the following question to you for your opinion,
to wit:-

"Does the term 'resident tax paying voters'
as it appears in Arts. 752e and 752d of the
Revised Civil Statutes of Texas, mean that the
signers of the petitions therein mentioned for
a road bond election must have actually paid
their poll taxes so as to be qualified to vote.

"The question arose when it was made to
appear at a hearing on a petition asking for
an election that although the required number
of signers were 'resident property tax payers'
and insufficient number were actual voters in
the sense of having paid their poll taxes."

Articles 752d and 752e of Vernon's Annotated Civil Statutes read as follows:

"Art. 752d.  Petition for election

"Where any political subdivision, or any road district, desires to issue bonds, there shall be presented to the Commissioners' Court of the county in which such subdivision or district is situated, a petition signed by fifty or a majority of the resident property taxpaying voters of said subdivision or road district praying such court to order an election to determine whether or not the bonds of such subdivision or district shall be issued to an amount stated for the purpose of the construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof, and whether or not taxes shall be levied on all taxable property within said subdivision or district in payment thereof. Upon presentation of such petition, it shall be the duty of the court to which it is presented to fix a time and place at which such petition shall be heard, which date shall be not less than fifteen nor more than thirty days from the date of the order. The clerk of said court shall forthwith issue a notice of such time and place of hearing, which notice shall inform all persons concerned of the time and place of hearing and of their right to appear at such hearing and contend for or protest the ordering of such bond election. Such notice shall state the amount of bonds proposed to be issued, and shall describe such political subdivision or road district by its name or number, and shall describe the boundaries thereof as such boundaries are described and defined in the order of the Commissioners' Court establishing such subdivision or district. The clerk shall execute said notice by posting true copies thereof in three public places within such subdivision or road district and one at the court house door of the county. Said notice shall be posted for ten days prior to the date of

said hearing. Said notice shall also be published in a newspaper of general circulation in the subdivision or district, if a newspaper is published therein, one time, and at least five days prior to such hearing. If no newspaper is published in such subdivision or district, then such notice shall be published in some newspaper published in the county, if there be one. The duties herein imposed upon the clerk may be performed by said clerk in person or by deputy, as provided by law for other similar duties." (Underscoring ours)

"Art. 752e. Hearing and determination

"At the time and place set for the hearing of the petition, or such subsequent date as may then be fixed, the court shall proceed to hear such petition and all matters in respect of the proposed bond election. Any person interested may appear before the court in person or by attorney and contend for or protest the calling of such proposed bond election. Such a hearing may be adjourned from day to day and from time to time, as the court may deem necessary. If upon the hearing of such petition, it be found that the same is signed by fifty or a majority of the resident property tax paying voters of such subdivision or road district, and that due notice has been given, and that the proposed improvements would be for the benefit of all taxable property situated in such subdivision or road district, then such court may make and cause to be entered of record upon its minutes an order directing that an election be held within and for such subdivision or road district at a date to be fixed in the order, for the purpose of determining the questions mentioned in such petitions; provided, however, that such court may change the amount of the bonds proposed to be issued, if, upon the hearing such change be found necessary or desirable. The proposition to be submitted at such election shall specify the purpose for which the bonds are to be issued, the amount thereof, the rate

> of interest, and that ad valorem taxes are
> to be levied annually on all taxable property
> within said district or subdivision sufficient
> to pay the annual interest and provide a sink-
> ing fund to pay the bonds at maturity."
> (Underscoring ours)

The word "voters" as ordinarily used, has two mean-
ings -- persons who perform the act of voting, and persons who
have the qualifications entitling them to vote. Its meaning
depends on the connection in which it is used, and it is not
always equivalent to electors. See Words and Phrases (Perm.Ed.)
Vol. 44, p. 459-461.

As used in the phrase "resident property tax paying
voters," in the quoted statutes, we are of the opinion that the
word "voters" means persons who have the qualifications entitl-
ing them to vote.

What is the purpose of a provision, such as contained
in the statutes under consideration, requiring a certain number
of "resident property tax paying voters" to petition for a bond
election before the Commissioners' Court can order such an elec-
tion? This question seems to be fully answered by former Chief
Justice Gaines of our Supreme Court in the case of Scarborough,
et al vs. Eubank, 93 Tex. 106, 53 S. W. 573, from whose opinion
we quote as follows:

> "The main, if not sole purpose of requir-
> ing the petition in favor of a change (of the
> county seat) before ordering an election is
> to save the public from the expense, loss of
> time, and excitement incident to such an elec-
> tion, unless there is a reasonable probability
> that the required majority of electors will
> vote for the change. * * *.

> "The number (of petitioners) ought to be
> sufficient to give some assurance that there
> exists a desire on part of a large proportion
> of the voters for the change to be voted for,
> and that there is a probability that, in case
> the election be ordered, the proposition will
> carry. This is the foundation of the policy

which determines the number of applicants
necessary to procure an order for an elec-
tion." (Underscoring and parenthetical
matter ours).

We are of the opinion that the word "voters," as used
in the quoted statute, means persons who have the qualifications
entitling them to vote.

Article 2954, Vernon's Annotated Civil Statutes, names
the classes of persons who are not qualified to vote in Texas.
Article 2955, Vernon's Annotated Civil Statutes, setting forth
the qualifications for voting, reads as follows:

"Art. 2955.  2939  Qualifications for
voting

"Every person subject to none of the
foregoing disqualifications who shall have
attained the age of twenty-one (21) years
and who shall be a citizen of the United
States, and who shall have resided in this
State one year next preceding an election,
and the last six (6) months within the dis-
trict or county in which he or she offers
to vote, shall be deemed a qualified elector.
The electors living in an unorganized county
may vote at an election precinct in the coun-
ty to which such county is attached for judi-
cial purposes; provided that any voter who
is subject to pay a poll tax under the laws
of this State, shall have paid said tax be-
fore offering to vote at any election in
this State and holds a receipt showing that
said poll tax was paid before the first day
of February next preceding such election;
and, if said voter is exempt from paying a
poll tax and resides in a city of ten thou-
sand (10,000) inhabitants or more, he or
she must procure a certificate showing his
or her exemptions, as required by this title.
If such voter shall have lost or misplaced
said tax receipt, he or she shall be entitled
to vote upon making and leaving with the judge of the
of the election an affidavit that such tax was

paid by him or her, or by his wife or by her husband before said first day of February next preceding such election at which he or she offers to vote, and that said receipt has been lost or misplaced. In any election held only in a subdivision of a county for the purpose of determining any local question or proposition affecting only such subdivision of the county, then in addition to the foregoing qualifications, the voters must have resided in said county for six (6) months next preceding such election. The provisions of this Article as to casting ballots shall apply to all elections including general, special, and primary elections; provided that a city poll tax shall not be required to vote in any election in this State except in city elections."
(Underscoring ours)

One of the qualifications that a person must have in order to be a "voter," therefore, is that he must have either paid his poll tax or show himself to be exempted from the payment of a poll tax as provided by law.

In Opinion No. O-4045, rendered by this department on October 6, 1941, it was held that the term "qualified voter" as used in Article 666-32 of the Texas Liquor Control Act means that a person must be qualified to vote either to the extent of having paid his poll tax or be exempted from paying same, before his signature on a petition requesting a local option election can be counted in computing the number of qualified voters who have signed the petition. We are enclosing herewith a copy of said opinion for your information.

In view of the foregoing, therefore, it is the opinion of this department, under the facts stated, that your question should be answered in the affirmative, and it is so answered.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Edgar Pfeil
Edgar Pfeil
Assistant

APPROVED OCT 23, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

EP:RS

ENCLOSURE

OK
BW

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN